SUMERFIELD BROWN v. MARY P. CRANE.

1. ATTACHMENT.  *Foreign domicile.  Residence.*

Domicile and residence are not convertible terms under our attachment law.  One who resides here, though having a domicile in another state, is not liable to attachment as a non-resident.  *Bowers* v. *Ross,* 55 Miss., 213.

2. SAME.  *Absence from state.  Residence here.  Case.*

Defendant owned a plantation in this state.  She and her husband had lived in Philadelphia, Pa., where he voted, and where they were in the habit of staying in the summer, his winters being spent here.  They spoke of Philadelphia as "home."  They had resided here several months when an attachment was sued out against her as a non-resident, and she was here personally served with process.  As was known to plaintiff when the suit was instituted, she contemplated residing here several months, and then going with her husband to Philadelphia for the summer, and returning to the plantation in October to abide permanently.  *Held,* that she was not a non-resident, and the attachment could not be maintained.

FROM the circuit court of Yazoo county.
HON. J. B. CHRISMAN, Judge.

Appellant sued out an attachment against appellee, alleging that she was a non-resident of this state.  The writ was levied on certain cotton in Yazoo county.  Defendant traversed the grounds of attachment, and there was a trial of the issue.  The evidence shows that defendant owned a plantation in Washington county, Miss., and that plaintiff was employed as manager thereon.  She and her husband had lived in Philadelphia, Pa.  That had been their home.  He voted there, and they had been in the habit of spending their winters on the plantation, going to Philadelphia in the summer.  In May, 1889, he visited Washington county, and shortly afterwards went back to Philadelphia, but returned to this state in October, when he informed plaintiff that he, Crane,

had taken charge of his wife's plantation. He remained there until the spring of 1890, when he went to Philadelphia, stating that his wife would return with him in the fall. He returned the following October, and his wife came a few days thereafter. Both remained until June, 1891. During the fall and winter, defendant and her husband, at different times, informed plaintiff that they had concluded to reside permanently in Mississippi, and that they intended repairing the dwelling on the plantation, and building another house for the use of plaintiff, the manager. Defendant and her husband had been boarding in Belzona, a village near the plantation, but engaged board with plaintiff's family, on the plantation, until May or June, 1891, when they contemplated going to Philadelphia for the summer and returning in the autumn. Meantime, appellant was dismissed from his employment, and, on the 21st day of February, 1891, he sued out the attachment in this case for wages claimed to be due. He testifies that he left Mr. and Mrs. Crane in the dwelling on the plantation when he moved away, and Mrs. Crane was there personally served with process.

There was testimony showing that, up to December, 1890, defendant and her husband, in conversation with plaintiff and his wife, had spoken of Philadelphia as "home," and plaintiff testified that he sued out the attachment on the faith of these statements. It was also shown that the husband of defendant, in November, 1890, had been requested to serve as clerk of an election at Belzona, and that he declined, on the ground that he was not a voter in this state. This, however, was not communicated to plaintiff.

At the conclusion of plaintiff's testimony, the court, on motion, excluded the same, and defendant offered evidence of damages resulting from the suing out of the attachment.

Afterwards, plaintiff offered to introduce in evidence a power of attorney, dated New York, April 9, 1890, executed by Mrs. Crane, wherein she constituted her husband her attorney in fact, and recited her husband and herself to be of

Philadelphia, Pa.   The court refused to admit this evidence. From a judgment in favor of the defendant, the plaintiff appeals.   The opinion contains a further statement of the case.

*Calhoon & Green*, for appellant.

Clearly, there was evidence tending to show non-residence. The defendant and her husband had lived in Philadelphia; he voted there; and they were in the habit of spending their winters here, and going home in the summer. [*] In fact, non-residence was abundantly proved.   The husband's domicile is presumed to be the domicile of the wife.   Non-residence once shown, the law presumes that it continues until a change is proved.

By some misconception of our decisions, the court below must have supposed that non-residence could only be proved by the declarations of the parties.   The declarations in this case were not contradicted, to say nothing of the habits of the parties.   Manifestly, defendant had not moved to Mississippi, and did not design to do so until the following autumn. The fact in issue was for the jury, and not for the court, to determine.

*Barnett & Thompson*, for appellee.

The burden was on the plaintiff to prove that defendant had no residence in this state, of either a temporary or permanent character.   *Alston* v. *Newcomer*, 42 Miss., 186; *Bowers* v. *Ross*, 55 *Ib.*, 213; 43 N. J. L., 495; 1 Wend., 45; 8 Am. & Eng. Enc. L., 292.

While their domicile may have been elsewhere, the residence of defendant and her husband was in this state at the time the attachment was sued out, and all the facts in regard to this were known to plaintiff.   An unexecuted intention of the parties to sojourn temporarily outside of the state could not render either of them liable to attachment as non-residents.   42 Miss., 186; Drake on Attach., § 39.

It is manifest that the parties intended to reside here per-

manently. This being true, they were not liable to attachment, even if we assume that their home was still in Philadelphia. 10 How., Pr., 477; 40 *Ib.*, 260; 12 N. W. Rep., 94; 13 *Ib.*, 282; 2 Neb., 7; 33 La. An., 304; 25 Fed. Rep., 197; 40 Ill., 40; 1 Dall., 152, 480; 3 Yates, 55; 1 Hump., 620; 2 Sneed, 420; 2 Nott. & McC., 323; 3 Gratt., 720; 43 N. J. L., 495.

Fixed residence for a time outside a jurisdiction will support a foreign attachment within it, and such residence within the jurisdiction will defeat a foreign attachment there instituted.

The principle of the cases of *Cocke* v. *Kuykendall*, 41 Miss., 65, and *Morgan* v. *Nunes*, 54 *Ib.*, 308, has no application. The defendant is not estopped to deny the grounds of attachment. An estoppel cannot be based upon a mere matter of intention, and the party claiming the benefit of the estoppel must have been actually misled. 50 Miss., 429; 57 *Ib.*, 490; Bigelow on Estoppel, 484, 487.

All that was said by defendant, and all that was done must be taken together. The parties merely spoke of "home" in Philadelphia in a casual conversation. The issue was as to defendant's *residence* when the suit was instituted. *McClanahan* v. *Brack*, 46 Miss., 246.

According to plaintiff's testimony, defendant had a fixed residence in this state from October, 1890, to May, 1891.

It is immaterial that the defendant contemplated going temporarily to Philadelphia for the summer. 37 N. J. L., 492; 11 Pick., 419; 6 Smed. & M., 375; 30 Gratt., 720.

The alleged declaration of the parties related to their domicile, not to their place of residence, which plaintiff knew was in Mississippi. To resort to an attachment when the defendant is within reach of ordinary process, is wholly inconsistent with the spirit and design of the statute. 18 Am. & Eng. Enc. L., 292; 43 Ark., 547.

WOODS, J., delivered the opinion of the court.

It was long ago determined that domicile and residence, under our attachment laws, were not convertible terms, and

that a person may have his domicile in one state and his residence, temporarily, in another. *Bowers* v. *Ross*, 55 Miss., 213. Granting that Mrs. Crane's husband had his domicile in Pennsylvania (which is not satisfactorily shown by the evidence), and that her domicile was that of her husband, she may yet have been a resident of this state at the time of issuing and levying the attachment writ.

The evidence offered for the plaintiff in attachment (and no other was offered) shows that Mrs. Crane had actually resided in this state for a few months prior to the taking out and levying of the writ; that she was residing on her plantation, in this state, at the very time; and that she expected to continue to reside in the state for a few months longer, when she contemplated a temporary absence until the following October; and that thereafter it was her purpose to remove her household effects to her dwelling-house on her plantation in Washington county, and thereafter make that her permanent abode. All this, moreover, was know to the attaching creditor. It is apparent, too, that the writ was, without trouble or delay, executed in person on Mrs. Crane by the proper officer in the county where the plaintiff knew she could be found.

On these facts being shown by plaintiff, the peremptory instruction of the court below for the defendant was altogether correct, for the ordinary process of the law could have been executed upon the debtor in any of the modes recognized by our statute for the serving of process upon residents of the state.

*Affirmed.*