BILBO *v.* BILBO.

(Division A.   Jan. 3, 1938.   Suggestion of Error Overruled Feb. 14, 1938.)

[177 So. 772.   No. 32951.]

Brewer & Hewitt, of Jackson, for appellant.

Hathorn & Williams, of Poplarville, for appellee.

H. H. Parker and J. M. Morse, both of Poplarville, for appellee.

Argued orally by **William H. Hewitt**, and **Earl Brewer**, for appellant, and by **J. M. Morse** and **F. C. Hathorn**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

An appeal is prosecuted here by the appellant, Mrs. Linda Ruth Bilbo, from a decree in the Chancery Court of Pearl River county overruling a plea to the jurisdiction of the lower court in a suit for divorce brought against her by the appellee, Senator Theo. G. Bilbo, husband of the appellant.

On March 13, 1937, appellee filed his bill for divorce against appellant in the chancery court of Pearl River county. On May 4, 1937, the appellant filed an answer and cross-bill for support and maintenance, and incorporated in her amended answer a plea to the jurisdiction of the court. On motion, this plea was separately heard; and after hearing the evidence thereon the court overruled the plea and an appeal was granted here. Following this hearing, the appellant applied to the court for a hearing on a motion for alimony pendente lite and attorney's fees. The court declined to hear the latter motion, but did allow the appellant temporary attorney's fees in the sum of $100.

The appellant assigns as error here: (1) The action of the court in overruling her plea to the jurisdiction; (2) the action of the court in declining to hear her application for and to allow her at that time alimony pendente lite; and (3) in fixing the attorney's fees allowed for prosecuting her plea to the jurisdiction at only $100 as being inadequate.

The plea, in substance, is that the appellant was not absent from the state so that process could not be served on her, and that the separation of the parties did not occur while they resided in Pearl River county, but that the parties resided in Hinds county at the time of their separation.

The allegation in the bill as to the jurisdiction of the court is that appellee, Senator Bilbo, complainant in the court below, is a citizen and resident of Pearl River county, Miss., and that he was a resident of said county and state at the time of the separation, and that the appellant, Mrs. Bilbo, defendant in the lower court, is a citizen and resident of Hinds county, Miss., but is now absent from this state so that process cannot be served on her in this suit, and that the defendant is not to be found in this state on diligent inquiry made by the appellee; nor has she at this time any place of abode therein, but that her post office and street address is Lafayette

Hotel, Sixteen and Eye Street Northwest, Washington, D. C. Appellant and appellee were residents of Pearl River county for a long time prior to and at the time of their separation as husband and wife, and appellee continued thereafter to be, and he still is, a resident of said county at the time this suit was instituted.

The bill further averred that the parties interested lived and resided together as man and wife in Pearl River county about the —— day of October, 1931, at which time they separated, and since have ceased to live together as husband and wife.

On the appellant's plea to the jurisdiction, she testified that appellee and she moved from Poplarville to Jackson, Hinds county, Miss., in the spring of 1923, and there resided in the Colonial Apartments for about a year, then moved into a home on Robinson street in Jackson, where she and the appellee lived until they moved into the Executive Mansion in 1928, the appellee having been elected Governor of Mississippi in 1927; that the separation occurred while they were living there in 1931; that at the end of the appellee's term as Governor of this state, she requested the appellee to permit her to go to Poplarville, but he refused her request and moved her into their home on Robinson street, in Jackson, Miss. She testified that she was personally served with process in this suit in Hinds county; that she was temporarily in Washington, D. C., at the time the suit was filed on matters of business, and had no intention of remaining away for a long time, having bought a round trip ticket from Jackson to Washington.

The appellee, Senator Bilbo, testified that he had been a resident of Poplarville, in Pearl River county, since 1908, and had maintained his home and residence there since that time; that he moved to Jackson as Governor in 1916 and returned to Poplarville in 1920 at the close of his first term as Governor of this state; that in 1923 he moved to Jackson, where he edited and operated a newspaper as a part of his campaign in the primary

election to be held in 1927; that during that time he and his wife voted in Pearl River county; that in 1923 they first lived in the Colonial Apartments, but later moved into a home which he built in Jackson on Robinson street as an investment, and where they lived until 1928; that from there they moved to the Executive Mansion, and in 1932, when leaving the Executive Mansion, he moved the appellant, at her request, back to the Robinson street home, and would have moved her to Poplarville had she requested, telling her that he was going to move to the Walthall Hotel in Jackson and remain and practice law. He further testified that he had never changed his domicile and residence from Pearl River county to Jackson, Miss. He stated that he had voted in Poplarville since 1908 in every county, city, and state election; that he paid his poll tax, and also his wife's after she became liable therefor, until their separation; that before he moved to Jackson to conduct his campaign for Governor for the state, he had acquired his old parental home and farm, and began the construction of a home known as the "Dream House." The record shows that he protested against Mrs. Bilbo's entering this "Dream House" or interfering with the parties whom he had placed there as caretakers. Appellee was born in Pearl River county and says he never removed his domicile or citizenship therefrom.

The appellee, at the time the bill was filed, knew that his wife was in Washington attending to legal business. They were engaged in litigation in Washington with each other.

It is contended by the appellee that the chancery court of Pearl River county had jurisdiction, because his wife was then absent from this state so that process could not be served on her, and that she did not have in the state a place of abode. The facts are that the appellant, Mrs. Bilbo, had a fixed place of abode and residence at the home on Robinson street in Jackson, Hinds county, Miss.; that she went to Washington to prosecute

her lawsuit, bought a return ticket, and left people residing in this home which she had occupied since the separation; that she was detained in Washington for about six weeks, much longer than she had anticipated.

It is agreed between counsel that section 1417, Code 1930, is decisive of this case on the question of jurisdiction, which is as follows: "The bill must be filed in the county in which the complainant resides, if the defendant be a non-resident of this state, or be absent, so that process cannot be served; and the manner of making such parties defendants so as to authorize a decree against them in other chancery cases, shall be observed. If the defendant be a resident of this state, the bill shall be filed in the county in which such defendant resides or may be found at the time, or in the county of the residence of the parties at the time of separation, if the complainant be still a resident of such county when the suit is instituted."

It will be noted that the bill must be filed in county in which complainant resides, if the defendant be absent so that process cannot be served. The proof shows here, beyond all question, that Mrs. Bilbo had a fixed place of abode on Robinson street, with people living there usually, and was only temporarily away from this place of abode attending to the prosecution of a lawsuit. The appellee knew the facts as to her absence and the cause thereof. The allegation of the bill that Mrs. Bilbo was absent from the state and had no place of abode is not sustained by the evidence. The evidence is uncontradicted that she had a usual place of abode; and under section 2978, Code 1930, which provides three modes of serving process, and in accordance with the third paragraph thereof, effectual process could have been served upon her by posting a true copy of the summons on the door of the appellant's usual place of abode. Such service of process would have been effectual under the method indicated herein. See Collier v. Chamblee, 136 Miss. 257, 101 So. 372.

■ Did the chancery court of Pearl River county have jurisdiction on the allegation of the bill that Senator Bilbo still resided in Pearl River county, and that the separation of the parties took place in that county in 1931? We are of the opinion that the proof shows that prior to the date of their separation, Senator Bilbo had his legal residence or domicile in Pearl River county, animus manendi. He at all times retained his citizenship there in so far as the payment of taxes and the exercise of his right of franchise were concerned, and maintained his home there and did not change his legal residence by moving to Jackson to conduct a political campaign.

We think his testimony is uncontradicted that in 1923 he was defeated as a candidate for Governor and on the next day announced his candidacy for the same office in the 1927 election, and moved temporarily to Jackson in the interest of that campaign, and, as a political organ to promote his candidacy, established a newspaper; that he lived with his wife on Robinson street in his home until he moved therefrom into the Executive Mansion in 1928, and while there, in 1931, they separated.

The controlling language of the statute is: "If the defendant be a resident of this state, the bill shall be filed in the county in which such defendant resides or may be found at the time, or in the county of the residence of the parties at the time of separation, if the complainant be still a resident of such county when the suit is instituted." There can be no question but that the appellee, Senator Bilbo, resided, had a domicile and residence in Pearl River county, from which county he was absent attending to his duties as a United States Senator from this state when he filed his bill. From his birth until the time in 1923 when he states he came to Jackson temporarily to conduct a campaign, he had established a domicile and residence in Pearl River county. The only ground upon which want of jurisdiction of that court can be predicated is the fact that for four years

before he entered upon the duties of Governor of this state in 1928, he and his wife sojourned in Hinds county.

The precise position of the appellant, Mrs. Bilbo, in this case was that the actual, physical residence of the parties at the time of the separation was in Hinds county, and that the preceding clause of the statute indicates the intention of the Legislature that a defendant in a divorce suit shall be sued in the county of his residence.

The general rule is that: "The word 'residence' as used in divorce statutes should be construed as equivalent to 'domicile' . . ." See 19 C. J., p. 26, section 26; Allgood v. Williams, 92 Ala. 551, 8 So. 722; Caheen v. Caheen, 233 Ala. 494, 172 So. 618; Bell v. Bell, 181 U. S. 175, 21 S. Ct. 551, 45 L. Ed. 804; Hiles v. Hiles, 164 Va. 131, 178 S. E. 913, 106 A. L. R. 1, and the extended notes on this subject.

The appellee at all times had the purpose, which is undisputed, to return to his domicile so far as this record shows, and his legal residence or domicile was fixed in Pearl River county. It is true that he conducted a long campaign of four years for the office of Governor of this state, but that lapse of time cannot be said of itself to constitute an abandonment of his legal residence, it being clear that the legal residence and domicile, as used in this statute, are synonymous, and were intended to be synonymous by the Legislature.

In the case of Clay v. Clay, 134 Miss. 658, 99 So. 818, this court held, necessarily, that the words "residence" and "domicile" were synonymous, so construing the words "an actual bona fide resident within this state" of section 1415, Code 1930, and also the words "the complainant resides" in the first clause of section 1417, Code 1930. In the Clay Case, supra, the complainant physically abided in California for a year before she filed her bill in Attala county in this state.

It is also shown that until 1923, the appellee had established a domicile in Pearl River county. Change of domicile must be not only voluntary, but it must be

with the intent to remain at the new home or place of residence without intention of returning to the former domicile. See May v. May, 158 Miss. 68, 130 So. 52; Jones v. Jones, 67 Miss. 195, 6 So. 712, 19 Am. St. Rep. 299; also McHenry v. State, 119 Miss. 289, 80 So. 763, and Clay v. Clay, supra. The principle here involved is fully discussed, and the words ''a resident freeholder in the district,'' found in section 176 of our Constitution, were construed to be the equivalent of ''legal residence.'' We conclude that the legal residence of these parties was in Pearl River county when they moved into the Governor's Mansion, and continued while they sojourned there until their separation was consummated.

Under section 2909, Code 1930, chapter 175, Laws of 1926, Pearl River county being the county of appellee's domicile and residence at the time he entered upon the discharge of his duties as governor of this state, residing in the Executive Mansion provided for such officer during the term of his office in Jackson, Miss., in Hinds county, the latter county did not become his domicile or legal residence, or residence as denominated under the above statute; for, under that section, it is provided that public officers of the state shall be deemed in law in all respects to be householders and residents of the county from which they so remove unless such officer elects to become an actual householder and resident of the county to which he removed for official causes.

''When a domicile is once acquired, it is presumed to continue, and the burden of proving the contrary is upon the party alleging it.'' Clay v. Clay, and May v. May, supra. ''When a woman marries, her domicile, and therefore her legal residence, becomes that of her husband.'' Weisinger v. McGehee, 160 Miss. 424, 134 So. 148, 150. Pearl River county was appellee's domicile of origin and of choice.

The evidence in this case is undisputed that the appellee did not change his domicile to Hinds county.

We do not think the cases relied on by the appellant

are in conflict with the conclusion here reached, and we are certain that they do not apply in the construction of the divorce statute here controlling. The case of Morgan v. Nunes, 54 Miss. 308, a construction of an attachment suit, has no application; also in the case of Enochs v. State, 133 Miss. 107, 97 So. 534, construing the inheritance tax statute, the distinction between domicile and residence was laid down. Appellant also cites Buckley v. Porter, 160 Miss. 98, 133 So. 215, wherein section 2072, Code 1930, relative to the jurisdiction of a justice of the peace was construed, had no application and cannot be fairly applied to this divorce statute.

Although the physical bodies of the parties hereto were located in Hinds county, their legal residence was in Pearl River county within the meaning of our statute. Therefore, the chancery court of Pearl River county had jurisdiction of this cause.

On appellant's motion for alimony pendente lite and counsel fees, we are of opinion that this court should not make any order relative thereto. The court below heard no evidence on that issue, and none is before us except the sworn motion of appellant that on account of her poverty she is unable to support herself. The sworn answer denies the allegation of poverty and alleges that the appellant has paid her counsel $1000. This allegation and the statement of payments made monthly by appellee stands undenied.

It must be made to appear to the court as to her support that such allowance is then essential and necessary and demanded by justice. See Porter v. Porter, 41 Miss. 116; Garland v. Garland, 50 Miss. 694, 701; 19 C. J., p. 209, section 507. If the appellant has paid her counsel, the sum alleged, that amount seems to us to be adequate to this date.

As the case progresses, the chancery court from time to time may, in its judicial discretion, make such allowances in this behalf as the circumstances may warrant having in view the necessities of the case and situation

of the parties. Parker v. Parker, 71 Miss. 164, 14 So. 459.

We overrule the motion without prejudice to the rights of the parties as may subsequently appear.

Affirmed.